ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| MILAGROS NIEVES RÍOS:<br>ROSITA RIVERA LÓPEZ;<br>VÍCTOR J. RIVERA NIEVES;<br>VICMARIE RIVERA NIEVES;<br>VÍCTOR M. RIVERA LÓPEZ;<br>ALICIA RIVERA LÓPEZ;<br>ALEXANDER RIVERA NIEVES;<br>LUZ M. RIVERA CALDERO<br><br>APELADOS<br><br>V.<br><br>MENNONITE GENERAL<br>HOSPITAL, INC. HNC<br>HOSPITAL GENERAL<br>MENONITA, INC. HNC<br>HOSPITAL MENONITA CAYEY<br>Y/O CENTRO MÉDICO<br>MENONITA CAYEY, Y OTROS<br><br>APELANTES | TA2025AP00552 | *APELACIÓN*<br>procedente del<br>Tribunal de<br>Primera Instancia<br>Sala de CGUAS<br><br>Caso Núm.<br>CG2022CV03104<br><br>Sobre:<br><br>Daños y Perjuicios |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz, y la juez Aldebol Mora

**Brignoni Mártir, Juez ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 18 de febrero de 2026.

Comparece ante nos, Mennonite General Hospital, Inc. H/N/C Hospital General Menonita, Inc. H/N/C Hospital Menonita Cayey ("Hospital Menonita") y/o Centro Médico Menonita Cayey; y The Medical Protective Company (en adelante, en conjunto, "la parte apelante"). A los fines de solicitar nuestra intervención para que dejemos sin efecto las determinaciones notificadas el 17, 30 y 31 de octubre del año 2025, por el Tribunal de Primera Instancia, Sala Superior de Caguas. Mediante los referidos dictámenes, el foro primario desestimó sumariamente las acciones instadas en contra del señor Carlos J. Fuentes Matos ("señor Fuentes") H/N/C Funeraria Valle de Paz; Jardín del Edén, Inc. ("Jardín del Edén); y Universal Insurance Company ("Universal"). De igual modo,

desestimó la *"Contestación a Demanda de Coparte y Reconvención contra Carlos J. Fuentes Matos H/N/C Funeraria Valle de Paz,"* presentada por la parte apelante.

Por los fundamentos que expondremos a continuación, *revocamos* las determinaciones recurridas.

**I.**

Los demandantes son familiares del causante Víctor Manuel Rivera Caldero. Originalmente, el grupo familiar de demandantes se componía de las siguientes personas: Milagros Nieves Ríos ("señora Nieves Ríos"); Rosita Rivera López; Víctor J. Rivera Nieves; Vicmarie Rivera Nieves; Víctor M. Rivera López; Alicia Rivera López; Alexander Rivera Nieves; y Luz M. Rivera Caldero.[1] Éstos, instaron acción judicial en contra de la parte apelante; el señor Fuentes, H/N/C Funeraria Valle de Paz; la Cooperativa de Seguros Múltiples de Puerto Rico; y Jardín del Edén.

En específico, el 11 de septiembre de 2022, los demandantes presentaron la *"Demanda"* de epígrafe por medio de la cual reclamaron una serie de indemnizaciones en concepto de daños y perjuicios.[2] Los demandantes relataron que, el 2 de mayo de 2022, el causante acudió al Hospital Menonita a realizarse un procedimiento quirúrgico ambulatorio. Sin embargo, debido a unas presuntas complicaciones de salud falleció en la noche del mismo día. Sostuvieron que, al día siguiente, la señora Nieves Ríos firmó una hoja de "Autorización para Recogido" y la "Hoja de Entrega de Cadáveres." Ello, a los fines de trasladar al causante desde el Hospital hasta la Funeraria Hernández localizada en el Municipio de Corozal.

---

[1] Es preciso señalar que, el 8 de marzo de 2023, los demandantes: Vicmarie Rivera Nieves, Víctor M. Rivera López y Alexander Rivera Nieves, solicitaron el desistimiento, sin perjuicio, de la causa de acción incoada. Ante ello, el 16 de marzo de 2023, el foro primario notificó que declaró *Ha Lugar* el desistimiento peticionado. De igual forma, el 14 de noviembre de 2023, los codemandantes Milagros Nieves Ríos, Víctor J. Rivera Nieves y Luz M. Rivera Caldero, solicitaron la autorización del foro apelado para desistir, sin perjuicio, de la reclamación instada. En atención de ello, el 16 del mismo mes y año, el foro primario notificó que concedió el desistimiento solicitado. En vista de lo anterior, el grupo de demandantes, únicamente, quedó compuesto por las señoras Rosita y Alicia Rivera López.

[2] El 25 de enero de 2023 los demandantes presentaron *"Demanda Enmendada,"* a los efectos de incluir como parte codemandada a la aseguradora Universal. La razón de ello estriba en que, la referida aseguradora, alegadamente tenía una póliza de seguro expedida a favor de Jardín del Edén al momento de ocurrir los hechos alegados.

Posterior a los trámites de rigor, alegaron que la encargada de la Funeraria Hernández fue a recoger al Hospital Menonita el cadáver del causante. En el proceso de recogido, la referida señora se percató que el cadáver que el Hospital le estaba por entregar, aducidamente, no era el cuerpo del causante, puesto que el "tag" de identificación adherido a la bolsa del cadáver indicaba el nombre de Víctor Manuel Malavé y no el nombre del causante, Víctor Manuel Rivera Caldero. Tras la encargada de dicha Funeraria indagar sobre lo sucedido, la Supervisora del Hospital Menonita, alegadamente, reveló que el cuerpo del causante había sido entregado a la Funeraria Valle de Paz. Así pues, según expresaron, el personal de la Funeraria Hernández procedió a comunicarse con la Funeraria Valle de Paz. Sostuvieron, que el señor Fuentes respondió al referido comunicado e indicó a la Funeraria Hernández que el cuerpo del causante había sido cremado.

Según arguyeron, dicha cremación fue realizada por Jardín del Edén en menos de cuarenta y ocho (48) horas de haber fallecido el causante. A su vez, alegaron que la Funeraria Valle de Paz les pretendió cobrar la cantidad de $2,500.00 por el servicio de cremación no autorizado. Ante tales hechos, sostuvieron que la parte apelante, la Funeraria Valle de Paz y Jardín del Edén son solidariamente responsables por los daños emocionales, angustias mentales y daños especiales sufridos por ellos.

En reacción, el 5 de diciembre de 2022, la parte apelante presentó *"Contestación a Demanda."* Aceptó, que el 2 de mayo de 2022, el causante acudió al Hospital Menonita para realizarse un procedimiento quirúrgico y que tras complicaciones de salud falleció ese mismo día. A su vez, admitió que la señora Nieves Ríos suscribió una documentación a los efectos de autorizar a la Funeraria Hernández a trasladar el cuerpo del causante hasta dicha Funeraria. De igual modo, aceptó que la encargada de la Funeraria Hernández solicitó descubrir el cadáver que iba a recoger e identificó que no era el cuerpo del causante.

El resto de las alegaciones principales contenidas en la *"Demanda"* fueron negadas por la parte apelante. La referida parte sostuvo que cumplió con la reglamentación aplicable y manejó adecuadamente la identificación de los cadáveres de su Hospital. Argumentó, que la Funeraria Valle de Paz acudió al Hospital Menonita y se le dio acceso a la habitación en donde se ubican los cadáveres. Expresó, que en ese momento el cuerpo del causante estaba correctamente identificado. Sin embargo, esgrimió que la Funeraria Valle de Paz se llevó el cadáver incorrecto, bajo un accionar guiado por su propia y exclusiva negligencia. De igual modo, aseveró que la posterior cremación del cuerpo del causante fue entera responsabilidad de dicha Funeraria. Por consiguiente, adujo que no responde por los actos u omisiones incurridos por el resto de las personas demandadas. Ante lo alegado, peticionó que se declare *No Ha Lugar* la reclamación entablada.

Subsiguientemente, las diferentes partes demandadas presentaron alegaciones responsivas e instaron demandas contra coparte. A continuación, resumimos las alegaciones principales de estas.

El 19 de enero de 2023, el señor Fuentes presentó "*Contestación a la Demanda".*[3] En esencia, negó que haya incurrido en acto u omisión negligente alguno. Alegó en la afirmativa, que la obligación legal de identificación de los cadáveres les corresponde a los familiares de la persona fallecida y a la Institución Hospitalaria. Por lo cual, aseveró que la entrega errónea de un cadáver no es su responsabilidad. A su vez, adujo que él no fue la persona que visitó el Hospital Menonita para recoger el cadáver y que el referido Hospital entregó el cuerpo en un contenedor sellado. Ante ello, esgrimió que no existe una disposición normativa que obligue a las funerarias a abrir estos contenedores.

En el mismo escrito, el señor Fuentes instó una "*Demanda de Coparte".* En síntesis, alegó que los daños sufridos por los demandantes fueron causados por el Hospital Menonita y su personal. Por la razón de

---

[3] En vista de la *"Demanda Enmendada,"* el 15 de febrero de 2023, el señor Fuentes presentó *"Contestación a la Demanda Enmendada."*

que estos no verificaron responsablemente la identidad del cuerpo que entregaron a la Funeraria Valle de Paz.

Por su parte, el 8 de febrero de 2023, Jardín del Edén presentó *"Contestación a Demanda Enmendada".* Expuso, que no tiene un deber de intervenir en la identificación de los cadáveres. Además, sostuvo que son las funerarias las que solicitan los permisos de cremación y traslado del cuerpo al centro de incineración.

Posteriormente, el 13 de febrero de 2023, la parte apelante presentó *"Contestación a Demanda de Coparte y Reconvención contra Carlos J. Fuentes Matos H/N/C Funeraria Valle de Paz"*. En la alegación responsiva, reiteró que los cadáveres estaban adecuadamente identificados. Así pues, sostuvo que el señor Fuentes H/N/C Funeraria Valle de Paz fue quien identificó el cuerpo que removería del Hospital y luego decidió trasladarlo a Jardín del Edén para su cremación. En cuanto a la reconvención, argumentó que el señor Fuentes H/N/C Funeraria Valle de Paz responde por cualquier indemnización que deba satisfacer el Hospital Menonita. Esto, dado que alegadamente los referidos codemandados fueron los únicos que incurrieron en actuaciones u omisiones negligentes.

Al día siguiente, el señor Fuentes presentó *"Réplica a Reconvención de Demanda de Coparte Mennonite General Hospital."* Argumentó, que los daños ocurridos se deben únicamente a las actuaciones negligentes del Hospital Menonita al implementar sus protocolos de identificación de cadáveres.

Tras varios trámites procesales que nos son necesarios de pormenorizar, el 15 de marzo de 2024, Jardín del Edén y Universal presentaron también una *"Demanda de Coparte".* Arguyeron, que el cadáver entregado a Jardín del Edén estaba identificado con el nombre de Víctor Manuel Malavé. Añadieron, que la Funeraria Valle de Paz entregó el cadáver al centro de cremación y Jardín del Edén ejecutó el

proceso de incineración a instancias de dicha Funeraria. Ante ello, reafirmaron su no incursión en actos u omisiones negligentes.

El señor Fuentes y la parte apelante se opusieron a la referida *"Demanda de Coparte".* El primero, reiteró que no incurrió en responsabilidad civil bajo el argumento de que la identificación de cadáveres le corresponde solamente al Hospital Menonita. En lo que respecta a la contestación de la parte apelante, ésta esgrimió que Jardín del Edén se debió asegurar de que el cuerpo que cremaría era el correcto.

Así las cosas, el 20 de mayo de 2025, el señor Fuentes presentó *"Solicitud de Sentencia Sumaria Parcial".[4]* Adujo, que no existen hechos materiales en controversia, por lo cual solicitó la desestimación expedita de la acción entablada en contra suya y de la Funeraria Valle de Paz. Reiteró, que los empleados del Hospital Menonita realizaron una identificación negligente de los restos del causante. Expresó, que al momento en que la Funeraria Valle de Paz visitó el Hospital Menonita para buscar el cadáver de Víctor Manuel Malavé, el personal de dicho Hospital sabía que tenía la custodia de dos (2) personas fallecidas con el mismo nombre, pero con distintos apellidos. Una de esas personas era el causante. Además, sostuvo, que la empleada del Hospital Menonita que entregó el cuerpo del referido causante no corroboró sus apellidos al momento en que realizó tal entrega a la Funeraria Valle de Paz. De otra parte, alegó que las funerarias no tienen una obligación en ley de abrir las

---

[4] Acompañó su solicitud con la siguiente prueba documental: "Carta Circular Núm. SA-05-2020;" "Certificado de Defunción" de Víctor Manuel Rivera Caldero; "Certificado de Defunción" de Víctor Manuel Malavé; Récord Médico de Víctor Manuel Rivera Caldero; "Autorización para Recogido" de Víctor Manuel Rivera Caldero; "Hoja de Entrega de Cadáveres a Funerarias" de Víctor Manuel Rivera Caldero; Deposición de Elisandra Ortiz Mendoza; "Declaración Jurada" suscrita por el señor Carlos Javier Fuentes Matos; "Autorización de Cremación y Orden de Disposición" de Víctor Manuel Malavé; "Autorización de Recogido y Traslado del Cuerpo" de Víctor Manuel Malavé; "Certificación Médica para Cremación" de Víctor Manuel Malavé; "Permiso de Tránsito Dentro de Puerto Rico" de Víctor Manuel Malavé; Epístola redactada suscrita por la Directora de Operaciones de Jardín del Edén; "Permiso de Tránsito Dentro de Puerto Rico" de Víctor Manuel Rivera Caldero; "Permiso de Cremación" de Víctor Manuel Malavé; "Permiso de Cremación y Enterramiento de Cenizas" de Víctor Manuel Malavé; "Entrevista Especial" suscrita por la señora Elisandra Ortiz Mendoza; Certificación expedida por Jardín del Edén; Carta de reclamación extrajudicial dirigida al señor Carlos Javier Fuentes; Recibo de Cenizas suscrito por el Lcdo. Philippe Beauchamp; Fotografía de la caja de las cenizas de Víctor Manuel Rivera Caldero; "Reglamento del Secretario de Salud Núm. 135."

bolsas en que se encuentran los cadáveres que deben trasladar de los hospitales. A su vez, argumentó que ante la existencia de la Pandemia del COVID-19, para esa época un cadáver se podía cremar antes de transcurrir cuarenta y ocho (48) horas. Concluyó, que el Hospital Menonita tenía del deber de cuidar el cuerpo del causante y, a pesar de ello, realizó una identificación errónea de sus restos.

En respuesta, el 29 de septiembre de 2025, la parte apelante presentó *"Oposición a Solicitud de Sentencia Sumaria Parcial".* [5] En esencia, planteó que no debe dictarse la sentencia sumaria parcial peticionada. Fundamentó su oposición en que la Funeraria Valle de Paz tenía una obligación de remover y trasladar el cadáver del señor Malavé – quien se llamaba igual que el causante – por instrucciones de la familia Malavé. Por consiguiente, entiende que a la referida Funeraria le correspondía identificar y trasladar el cadáver correcto, lo cual no hizo. Cónsono con lo anterior, alegó que la Funeraria Valle de Paz tenía un deber de corroborar la identidad del cadáver que debía recoger, como alegadamente lo admitió el señor Fuentes en el acto de deposición. Además, esgrimió que el "hecho medular sobre la identificación del cadáver al momento de ser retirado del Hospital está en controversia".

En atención de los escritos presentados, el 17 de octubre de 2025, el foro apelado notificó la primera de las sentencias parciales que hoy nos ocupan. Mediante esta, dictó sentencia sumaria a favor del señor Fuentes H/N/C Funeraria Valle de Paz. El foro primario concluyó, que la identificación adecuada y el manejo primario de guarda correspondía exclusivamente al Hospital Menonita. De igual modo, determinó que la referida Funeraria cumplió con las leyes y reglamentación aplicables.

Posteriormente, los días 30 y 31 de octubre de 2025, el foro apelado notificó las restantes dos (2) sentencias parciales objeto de revisión. A través de la primera, desestimó la *"Contestación a Demanda*

---

[5] Acompañó la presente Oposición con la siguiente prueba documental: Trascripción de Deposición de Carlos Javier Fuentes Matos; Protocolo de "Manejo de Cadáveres"; "Declaración so Pena de Perjurio" suscrita por Gloria I. Mercado Rivera; "Descripción de Deberes y Responsabilidades".

*de Coparte y Reconvención contra Carlos J. Fuentes Matos H/N/C Funeraria Valle de Paz,"* presentada por la parte apelante. Mediante la segunda determinación, desestimó las acciones instadas en contra de Jardín del Edén y Universal.

En desacuerdo, el 17 de noviembre de 2025, la parte apelante presentó ante este Tribunal un recurso de apelación. A través de este, esbozó los siguientes señalamientos de error:

> Erró el TPI al no considerar la Oposición a Solicitud de Sentencia Sumaria presentada por las apelantes el 29 de septiembre de 2025 cuando ésta fue presentada de manera oportuna.

> Erró el TPI al no declarar incontrovertidos hechos propuestos por Menonita en su Oposición a Solicitud de Sentencia Sumaria que fueron sustentados con prueba admisible y que no fueron refutados por ninguna parte.

> Erró el TPI al determinar como incontrovertidos hechos propuestos por fuentes en su Solicitud de Sentencia Sumaria Parcial que no están sustentados por los documentos propuestos en apoyo de éstos.

> Erró el TPI al determinar como incontrovertidos hechos propuestos por fuentes que fueron sustentados con documentos que no son admisibles en evidencia.

> Erró el TPI al determinar como incontrovertidos hechos propuestos por fuentes que son conterarios [sic] al testimonio que el propio fuentes ofreció durante su deposición.

> Erró el TPI al resolver que la obligación de la identificación adecuada y manejo primario de guarda, conservación y adecuada identificación de Víctor Manuel Rivera Caldero correspondía exclusivamente al Hospital Menonita.

> Erró el TPI al resolver que la codemandada funeraria Valle de Paz y Jardín del Edén, como agentes funerarios, cumplieron con las obligaciones que le impone la Ley y el Reglamento en el manejo y traslado de un cadáver entregado para cremación.

> Erró el TPI al desestimar la reconvención de Menonita contra fuentes mediante Sentencia Parcial bajo la Entrada 192 del TPI.

> Erró el TPI al desestimar la Demanda Enmendada contra Jardín del Edén y su aseguradora Universal Insurance Company mediante Sentencia Parcial bajo la Entrada 193 del TPI.

El 9 de diciembre de 2025, esta Curia notificó una *"Resolución"*, mediante la cual le concedimos a las partes apeladas el término

reglamentario de treinta (30) días para presentar sus alegatos en oposición.

Tras concedérseles a las referidas partes la prórroga peticionada, los días 15 y 16 de enero de 2026, el señor Fuentes H/N/C Funeraria Valle de Paz; Jardín del Edén; y Universal, presentaron sus respectivos alegatos en oposición.

Con el beneficio de la comparecencia de las aludidas partes, procedemos a esbozar el marco legal aplicable al caso ante nuestra consideración.

## II.

**A**. **Sentencia Sumaria**:

La sentencia sumaria es un mecanismo procesal cuya función es permitir a los tribunales disponer parcial o totalmente de litigios civiles en aquellas situaciones en las que no exista alguna controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Negrón Castro y otros v. Soler Bernardini y otros*, 2025 TSPR 96; *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico*, Inc., 2025 TSPR 1; *Oriental Bank v. Caballero García,* 212 DPR 671, 679 (2023); *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020).

Así pues, se dictará sentencia sumaria cuando las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hay u otra evidencia que obre en el expediente del tribunal, demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente. 32 LPRA Ap. V, R. 36.3 (e); *Consejo de Titulares del Condominio Millennium v. Rocca Development Corp.,* 2025 TSPR 6; *González Meléndez v. Municipio Autónomo de San Juan,* 212 DPR 601, 611-612 (2023). Así, el criterio rector al considerar la procedencia de un dictamen sumario es que no haya controversia sobre los hechos esenciales pertinentes, según alegados por las partes en sus respectivas solicitudes u oposiciones, y que solo reste aplicar el Derecho. *Batista Valentín v. Sucn. De José*

*Enrique Batista Valentín y otros*, 2025 TSPR 93; *Rodríguez García v. UCA,* 200 DPR 929, 941 (2018). Esta determinación debe ser guiada por el principio de liberalidad a favor de la parte que se opone a que se dicte sentencia sumaria, para evitar la privación del derecho de todo litigante a su día en corte. *Ramos Pérez v. Univisión*, 178 DPR 200, 216-217 (2010).

Al examinar la procedencia de una solicitud de sentencia sumaria, los tribunales deben guiarse por las disposiciones de la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1-36.7. Al efectuar el referido examen, el Tribunal de Apelaciones, deberá realizar una revisión *de novo* y examinar el expediente de la manera más favorable a la parte que se opuso a la moción de sentencia sumaria en el foro primario, haciendo todas las inferencias permisibles a su favor. *Acevedo Arocho v. Departamento de Hacienda de Puerto Rico,* 212 DPR 335, 353 (2023)*; Meléndez González et al v. M Cuebas*, 193 DPR 100, 118 (2015).

Nuestra evaluación está limitada a la consideración de la evidencia que las partes presentaron ante el foro de primera instancia. Debemos revisar que los escritos cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*. Además, verificamos si en realidad existen hechos materiales en controversia. Finalmente, de encontrar que los hechos materiales realmente están incontrovertidos, revisamos si la primera instancia judicial aplicó correctamente el derecho a la controversia. *Meléndez González et al. v. M. Cuebas, supra*, págs. 118-119.

Si de los documentos surge duda sobre la existencia de una controversia de hechos, éstas se deben resolver contra el promovente, ya que este mecanismo procesal no permite que el Tribunal dirima cuestiones de credibilidad. *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 809 (2020). De igual modo, como regla general, no es aconsejable disponer de los casos por la vía sumaria cuando exista controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia. *Jiménez Soto v. Carolina Catering Corp.*, 2025 TSPR 3. Este foro

intermedio tampoco puede adjudicar los hechos materiales y esenciales en disputa, ya que esa tarea le corresponde al foro de primera instancia. *Vera v. Dr. Bravo*, 161 DPR 307, 335 (2004).

**B. Daños y Perjuicios:**

El Artículo 1536 del Código Civil de Puerto Rico, dispone expresamente que "[l]a persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo". 31 LPRA sec.10801. Véase, además, *Inmob. Baleares et al. v. Benabe et al.,* 214 DPR 1109, 1125 (2024); *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 483 (2022); *Colón Santos v. Coop. Seg. Mult. P.R.* 173 DPR 170,177 (2008). Para que prospere una reclamación por daños y perjuicios al amparo de esta disposición el reclamante debe probar 1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) el daño real causado al reclamante. *Departamento de Asuntos del Consumidor v. Luma Energy, LLC y otros,* 2025 TSPR 126; *Cruz Flores v. Hosp. Ryder et al.,* supra; *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010).

**La culpa o negligencia es falta del debido cuidado, esto es, no anticipar ni prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en tales circunstancias.** (Énfasis suplido). Sucn. *Mena Pamias et al. v. Meléndez et al.,* 212 DPR 758, 768 (2023); *Montalvo v. Cruz*, 144 DPR 748, 755 (1998). En otras palabras, "[L]a culpa o negligencia del deudor consiste en la omisión de aquella diligencia que exija la naturaleza de la obligación y corresponda a las circunstancias de las personas, del tiempo y del lugar". *Elba A.B.M. v. U.P.R.,* 125 DPR 294, 309 (1990).

Si el daño es **previsible** por éste, hay responsabilidad; sino es previsible, estamos generalmente en presencia de un caso fortuito. (Énfasis suplido). *Montalvo v. Cruz*, *supra*, a la pág. 756. "[E]l acto es ilícito en sentido extracontractual cuando viola los deberes generales de corrección o conducta correcta, deberes que no están escritos en los

códigos pero que representan el presupuesto mínimo sobreentendido del orden de la vida social". *Toro Aponte v. E.L.A,* 142 DPR 464, 473 (1997).

Para que exista culpa se requiere la ejecución de un acto que cause un perjuicio a otra persona, y a su vez la negligencia supone la existencia de una omisión que produzca el mismo efecto. *Toro Aponte v. E.L.A,* supra, págs. 473-474. Para determinar responsabilidad extracontractual por omisión se deben considerar los siguientes elementos: (1) la existencia o inexistencia de un deber jurídico de actuar por parte del alegado causante del daño, el incumplimiento del cual constituye la antijuridicidad, y (2) si de haberse realizado el acto omitido se hubiera evitado el daño. *Id.* Es preciso señalar, que no queda excluida la responsabilidad de un posible cocausante por la única razón de que no haya un estatuto que le imponga un deber de actuar de manera específica. *López v. Porrata Doria,* 169 DPR 135, 159 (2006). A esos efectos el Tribunal Supremo ha expresado lo siguiente:

> **...el cumplimiento con un estatuto o un reglamento no exime de por sí de responsabilidad, si ante las circunstancias particulares del caso un hombre prudente y razonable hubiese tomado precauciones adicionales.** De otra parte, el incumplimiento de un estatuto o un reglamento no conlleva de por sí responsabilidad a menos que exista relación causal entre el resultado dañoso y el incumplimiento. (Énfasis suploido). *López v. Porrata Doria,* supra, Citando a Brau del Toro, *op. cit.*, pág. 175.

## C. "Ley de Servicios Funerarios de Puerto Rico"

La Ley sobre Servicios Funerarios de Puerto Rico, Ley Núm. 258-2012, según enmendada, 3 LPRA sec. 3771 et seq., contempla entre sus propósitos, que se provean servicios funerarios con "el más alto grado de respeto y solemnidad ante el hecho irremediable de la muerte de un ser humano". Exposición de Motivos, Ley Núm. 258-2012, *supra.* Cónsono con ello, la Asamblea Legislativa reconoce que los servicios funerarios se deben suministrar en el marco de la inviolabilidad de la dignidad del ser humano.  Así, el Artículo 1.02 de la precitada legislación lee como sigue:

> Es política pública del Pueblo de Puerto Rico reconocer que la dignidad del ser humano es inviolable, y que ese fundamental principio trasciende la vida natural y se proyecta hacia la posteridad, por lo que el trato dado a toda

persona fallecida, y en consideración a sus deudos, debe estar revestido del mayor grado de dignidad, consideración y respeto, en un plano de justicia esencial sostenido por los valores de la cultura occidental de la cual somos parte. 3LPRA sec. 3772.

En lo atinente, el traslado de un cadáver debe efectuarse de forma cubierta mediante una cremallera y protegido de manera que no esté expuesto a simple vista y no represente riesgo para la salud pública. 3 LPRA sec. 3791. Si la muerte de una persona ocurre en una institución hospitalaria sus restos humanos, como regla general, podrán ser removidos y trasladados directamente a la funeraria o crematorio autorizado por el familiar o institución autorizada. 3 LPRA sec. 3796. Toda empresa que provea servicios fúnebres deberá cumplir con **"todos los requisitos dispuestos por las leyes y reglamentos de Puerto Rico, y con aquellos dispuestos mediante ordenanza del municipio donde esté operando sus facilidades".** (Énfasis suplido). 3 LPRA sec. 3801.

En lo que respecta a los centros de cremación, cada uno de éstos llevará un registro de los cadáveres sometidos a incineración que contendrá los datos siguientes:

(1) Nombre completo, incluyendo pseudónimo o apodo.
(2) Fecha, hora y lugar de la muerte.
(3) Persona que recibe el cadáver en el centro de cremación, con fecha y hora en que se recibió.
(4) Descripción del envase o ataúd en que el cuerpo fue recibido, incluyendo el número de serie en el Registro de Ataúdes.
(5) Fecha, hora y nombre de la persona que realiza la cremación.
(6) Especificaciones del envase o receptáculo en que se incinera el cadáver.
(7) Nombre de la persona a quien se entregan las cenizas.
3 LPRA sec. 3864.

### III.

En este caso, el foro primario desestimó las causas de acción instadas en contra del señor Fuentes H/N/C Funeraria Valle de Paz; Jardín del Edén y su aseguradora Universal. Razonó, que no existen hechos materiales en controversia que impidan la adjudicación sumaria de las reclamaciones incoadas en contra de estos codemandados. En particular, el foro apelado determinó que el Hospital Menonita identificó erróneamente el cadáver del causante y que por error exclusivo de sus

empleados los restos del referido causante no pudieron ser entregados a la funeraria correcta. De igual modo, concluyó que el cadáver que fue cremado por Jardín del Edén estaba erróneamente identificado como Víctor Manuel Malavé.[6]

Tras una revisión de la totalidad del expediente ante nuestra consideración, concluimos que existen hechos materiales en controversia que impiden la adjudicación sumaria de las aludidas causas de acción. Nos explicamos.

De conformidad al expuesto marco doctrinal, este Tribunal debe realizar un examen de *novo* de la totalidad del expediente de los casos que el foro primario haya adjudicado sumariamente. En dicha tarea debemos auscultar si existen hechos esenciales en controversia a través de una evaluación del expediente del caso de la manera mas favorable a la parte que se opone a la solicitud de sentencia sumaria. De estar incontrovertidos los hechos materiales del caso, procedemos a examinar si el foro primario aplicó correctamente el derecho a los hechos materiales. El trato es distinto ante la existencia de algún hecho esencial en disputa, en esos casos debemos declarar la improcedencia de la resolución sumaria. Es preciso destacar que, si surge duda sobre la existencia de alguna controversia fáctica, esta se debe resolver en contra del promovente de la sentencia sumaria.

En este caso, existen versiones encontradas de la parte apelante; el señor Fuentes H/N/C Funeraria Valle de Paz; Jardín del Edén y la aseguradora Universal. En particular, el Hospital Menonita plantea que identificó correctamente los cadáveres bajo su custodia y que el personal de la Funeraria Valle de Paz trasladó del Hospital el cuerpo incorrecto, por su propia y exclusiva negligencia. De otro lado, el señor Fuentes sostiene que el Hospital Menonita no identificó adecuadamente los restos corporales, lo cual era su deber primordial y exclusivo por ser el custodio de estos cadáveres. Por consiguiente, aduce, que la parte apelante es la

---

[6] Véase, determinaciones de hechos Núm. 9; 16; y 26 de la *"Sentencia Parcial Enmendada".*

única que en el presente caso incurrió en negligencia. Por su parte, Jardín del Edén y Universal arguyen que a ellos se les entregó los restos humanos de un cadáver identificado como Víctor Manuel Malavé y no con el nombre de Víctor Manuel Rivera Caldero.

En vista de lo anterior, se encuentra en controversia el proceso de identificación del causante al momento en que se le debía colocar las correspondientes tarjetas o etiquetas de identificación. De igual modo, está en controversia lo ocurrido durante el proceso de selección de los restos humanos al momento de efectuarse la interacción del personal del Hospital Menonita y el personal de la Funeraria Valle de Paz para la entrega y recogido del cadáver de Víctor Manuel Malavé. A ello se le une, la existencia de controversia sobre si el personal de la Funeraria Valle de Paz verificó – antes de efectuar el traslado – las identificaciones ("tag") del cadáver y corroboró que este llevaba el nombre de Víctor Manuel Malavé. Cónsono con lo anterior, existe controversia sobre si ¿el cadáver que Jardín del Edén recibió para cremar portaba una identificación con el nombre del causante o el de Víctor Manuel Malavé?

Además, estos hechos requieren que se examine el elemento subjetivo de la negligencia y que se evalúe la credibilidad de la prueba testimonial. Por lo cual, el presente caso amerita la celebración de una vista en su fondo. Es preciso destacar, que la adjudicación sumaria de los litigios es un mecanismo procesal que procede solo en casos excepcionales. Únicamente cuando no exista duda de su aplicabilidad.

Por otro lado, concurrimos con la apreciación del foro primario en que las siguientes determinaciones de hechos, según esbozadas en la *"Sentencia Parcial Enmendada,"* no están en controversia: #1; #2; #3; #4; #5; #6; #7; #8; #11; #12; #13; #15; #17; #18; #20; #21; #22; #23; #24; #25; #28; y #30.

Ante las anteriores consideraciones, incidió el foro apelado al concluir que los hechos materiales del caso no están en controversia. Asimismo, erró al realizar una aplicación de derecho adelantada cuando

existen elementos esenciales fácticos en disputa, los cuales son vitales para determinar si las partes aquí apeladas incurrieron en algún accionar o en alguna omisión culposa o negligente. Por lo cual, revocamos las tres (3) determinaciones recurridas.

**IV.**

Por los fundamentos expuestos, *revocamos* todos los dictámenes recurridos y devolvemos el presente caso para la continuación de los procesos de conformidad con lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones